FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

99 FEB 10 PM 4: 07

U.S. DISTRICT COURT
N.D. OF ALABAMA

PATRICIA PELFREY,                        )

    Plaintiff,                           )

v.                                       )        Case No: CV-98-PT-2422 E

EDUCATIONAL CREDIT MANAGEMENT           )
CORPORATION,                             )

    Defendant.                           )

**ENTERED**

FEB 1 0 1999

### MEMORANDUM OPINION

This cause comes to be heard on defendant Educational Credit Management Corporation's ("ECMC") Motion to Dismiss, which has been treated by this court as a motion for summary judgment, filed November 30, 1998. Plaintiff Patricia Pelfrey (hereinafter "Pelfrey" or "plaintiff"), on behalf of herself and a nationwide class, filed a complaint on September 25, 1998, alleging that ECMC violated the federal Fair Debt and Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), in attempting to collect on her student loan. Defendant claims that it is a guaranty agency operating pursuant to the regulations of the Federal Family Education Loan Program ("FFELP"), and that the FDCPA does not apply to such agencies. ECMC thus contends that Pelfrey's claim should be dismissed.

### I. Facts

The facts of the case relevant to the summary judgment motion are not complex. Plaintiff obtained a student loan from the Altus Bank on February 24, 1989 in the amount of $2,625.00. The loan was originally guaranteed by the now defunct Alabama Guaranteed Student Loan Program ("AGSLP"), a state guaranty agency. On April 12, 1992, plaintiff filed for bankruptcy under Chapter 13 of the Bankruptcy Code. Plaintiff's loan went into default on or about May 4, 1992. On May 7, 1992, Altus Bank submitted a claim to the AGSLP. Pursuant to its agreement with the bank, AGSLP paid the default claim to Altus on August 19, 1992. AGSLP filed a proof of claim in the bankruptcy proceeding on October 1, 1992 in the amount of $2,952. During the pendency of the proceedings and pursuant to the plaintiff/debtor's Chapter 13 plan, the Chapter 13 trustee made payments on the student loan totaling $960.18.

While Pelfrey's bankruptcy case was pending, AGSLP, as part of its winding up, assigned her account, on August 1, 1996, to ECMC. Plaintiff's bankruptcy case was discharged on January 16, 1998. Following the discharge, during the months of February and March of 1998, ECMC made several phone calls and mailed

17

several letters to the plaintiff with the intention of collecting on the debt. Pelfrey alleges that ECMC violated the provisions of the FDCPA by sending her collection letters which lacked the consumer warning and verification notice required by §§ 1692(e) and (g) of the FDCPA, and which "threatened action that cannot be legally taken." Rather than arguing that the correspondence did not violate the strictures of the FDCPA, defendant contends, as stated above, that it is a guaranty agency and that the FDCPA does not apply to guaranty agencies, such as itself, operating under the auspices of the FFELP.

**II. Guaranty Agencies and the FFELP**

In 1965, Congress, in response to a perceived need for financial assistance to students in higher education, passed the Higher Education Act of 1965, 20 U.S.C. § 1071, et seq., ("HEA"). The purpose of the HEA is to "keep the college door open to all students of ability," regardless of socioeconomic background. Under the HEA, eligible lenders make guaranteed loans on favorable terms to students or parents to help finance student education. The loans are typically guaranteed by guaranty agencies (state or private) and ultimately by the government.

The HEA provides aid to students through federally-sponsored loan programs or through grants. Federally-sponsored loan programs include: (1) Federal Perkins Loan Programs; (2) Federal Family Education Loan Programs, which include Federal Stafford Loans (subsidized and unsubsidized), Federal Plus (Parent) Loans, and Federal Consolidation Loans; and (3) Federal Direct Student Loan Programs, which include the Direct Stafford Loans, Direct Unsubsidized Stafford Loans, and Direct Plus (Parent) Loans. Federal grants include: (1) Federal Pell Grants; and (2) Federal Supplemental Education Opportunity Grants.

The FFELP is authorized under Title VI, Part B, of the HEA.[1] As stated above, the FFELP is an umbrella term for four different guaranteed student loan programs. Participating lending institutions, such as Altus Bank, use their own funds to make loans to qualified borrowers attending eligible postsecondary schools. The loans are guaranteed by state agencies, such as the AGSLP, or non-profit organizations, such as ECMC, and are subsidized and reinsured by the United States Department of Education. 20 U.S.C. §§ 1071, 1087-1. The objective of the student loan programs is to make accessible further schooling for students of limited means by encouraging lenders to make funds available to students of limited means throughout the country. Private lenders are encouraged to loan money to students, secondary market participants are encouraged to purchase the loans, and guaranty agencies are created or encouraged to guarantee them.

Lenders participating in the program receive two types of federal subsidy payments on loans made to

---

[1] Note that, prior to 1992, Federal Family Education Loans were typically referred to as "Guaranteed Student Loans," or "GSLP" loans.

qualified borrowers. First, the Department of Education ("DOE") pays the holder of a qualifying loan the interest that accrues on the loan during specified periods. Second, the DOE pays the holder, for the life of the loan, an additional subsidy, called a special allowance. Pursuant to the governing FFELP regulations, lenders must satisfy due diligence requirements with regard to the making, disbursing, servicing and collecting of student loans. See 34 C.F.R. §§ 682.206-208, 682.411. Loan-making duties, in particular, entail processing the loan application and other required forms, approving the borrower for a loan, determining the loan amount, explaining to the borrower his or her rights and responsibilities, and completing and having the borrower sign the promissory note.

The guarantee agency, when used by the DOE, is the link between the lender and the DOE. It administers the program at the state and local levels. Its primary function is to issue guaranties to lenders on qualifying loans, for which it collects insurance premiums paid by the lenders but passed on to the borrowers. Guaranty agencies must insure one hundred percent of the amount of these loans. If a borrower defaults in repaying her loan, her guaranty agency pays the holder of the loan pursuant to its guaranty commitment after the holder has satisfied its due diligence collection requirements and filed a claim with the agency. The holder may be either the eligible lender or another eligible financial institution to whom the loan has been properly assigned. 34 C.F.R. § 682.401(b)(9). Upon payment of the holder's claim, the guaranty agency procures an assignment of the loan and is thereafter charged with attempting to collect the unpaid balance of the loans directly from the defaulting borrower. 20 U.S.C. § 1078(c); 1080a (c)(4).

The guaranty agencies that are authorized to participate in the program are reinsured by the DOE. Pursuant to § 428(c) of the HEA, the DOE may enter into reinsurance agreements with qualifying guaranty agencies to reimburse them for between 80% and 100% of losses incurred in honoring default claims on qualifying loans if they act in accordance with the procedures outlined in the regulations promulgated under the HEA and, specifically, the FFELP. 20 U.S.C. § 1078(c). According to Larry Oxendine, the Director of DOE's Guarantor and Lender Oversight Staff,[2] the DOE usually reimburses guarantors under the reinsurance agreement promptly after they pay default claims. The agencies then hold and collect the loans subject to the right of the DOE to demand assignment when the DOE determines that Federal interests so require. 20 U.S.C. § 1078(c)(1)(A). Thus, guaranty agencies have a continuing obligation to pursue collection activities even after

---

[2] Mr. Oxendine's affidavit has been filed with the court. In his affidavit, Mr. Oxendine stated that he is responsible for the DOE's oversight of guaranty agencies in the FFELP and that, as part of his responsibilities, he is "intimately involved with interpreting and enforcing the statute and regulations governing the [FFELP]."

the Secretary pays reinsurance claims. 34 C.F.R. § 682.410(b)(6). Under 20 U.S.C. § 1070(b) the DOE is given broad enforcement authority to implement the provisions of the HEA and the regulations passed thereunder. See L'ggrke v. Benkula, 966 F.2d 1346, 1347-48 (10ᵗʰ Cir. 1992) (stating that, pursuant to Title IV of the HEA and the regulations promulgated thereunder, 34 C.F.R. §§ 668 et seq., the Secretary of Education has authority to enforce the provisions of the Act).

Under the DOE's regulations governing the FFELP guarantors must deposit into their reserve funds all payments and earnings arising from their guaranty program operations. 34 C.F.R. § 682.410(a)(1). The defaulted student loans acquired by the guarantors upon payment of default claims to lenders constitute, according to Oxendine, a significant portion of the assets of guarantors' reserve funds. The assets comprising the reserve fund are deemed by law to be "property of the United States" and may only be used to pay guaranty program expenses and contingent liabilities. 20 U.S.C. § 1072(g)(1). The Secretary of Education may, under 20 U.S.C. § 1072(g)(1)(A),(B),(C), order a guarantor to cease any expenditure or transfer of reserve fund assets that he determines to be improper, and may direct the guarantor to transfer some or all of the assets to the government or to another guarantor as may be necessary to support loan program administration. The DOE, according to Oxendine, therefore considers guaranty agencies to be fiduciaries with regard to the administration of the funds. Additionally, according to Oxendine's statement, the agreements between ECMC and the DOE in this situation actually involve an even greater degree of governmental control over the agency's reserve fund, in that ECMC must, on an annual basis, liquidate the majority of its reserves and return them to the DOE, leaving only an amount sufficient to cover six months worth of expenses.

The DOE regulations with respect to guaranty agencies participating in FFELP loans specifically require the guaranty agencies to perform a number of actions in attempting to collect on the defaulted, reinsured loans they hold.[3] The regulations covering the "due diligence" requirements of guaranty agencies are found at 34 C.F.R. § 682.100, et seq. Required collection actions include a sequence of dunning letters and telephone contacts, reporting the defaulted loan to credit bureaus, Federal and State income tax refund offsets, non-judicial "administrative" wage garnishment, and, where appropriate and authorized, collection litigation. The written notices must be sent to the defaulting borrower by the agency within 45 days following payment on the guaranty and must contain specific information regarding the loan and the consequences of non-payment. 34 C.F.R. § 682.410(b)(5)(ii)(A), (b)(5)(iv), and (b)(6)(iii). The agency must also "diligently" attempt to reach

---

[3] The Department of Education regulations define a guarantee agency as "[a] State or private nonprofit organization that has an agreement with the Secretary to administer a loan guarantee program under the [HEA]." 34 C.F.R. § 682.200(b) (1991).

the borrower by telephone during this same period of time. 34 C.F.R. § 682.410(b)(6)(iii)(B). Over the following 135 days, the agency must send at least three additional written notices "forcefully demanding" repayment and informing the borrower that the default has been reported to a credit bureau. 34 C.F.R. § 682.410(b)(6)(iv). Thereafter, the agency is to take more substantial steps toward the recovery of the debt. The Secretary of the DOE is empowered to take remedial actions against a guaranty agency which fails to comply with the requirements set out in the FFELP regulations. 34 C.F.R. § 682.413.

In his affidavit, Mr. Oxendine states that ECMC was created in 1994 because the DOE determined that a new guaranty agency was needed to provide specialized guarantor services. He stated that:

> [T]he [DOE] wanted a new agency to help administer various loan guaranty responsibilities on certain student loans that were either (1) guaranteed by the Higher Education Assistance Foundation ("HEAF"), a guaranty agency that ceased operations guaranteeing loans in 1990, and liquidated in 1994 . . . or (2) that had been the subject of Chapter 13 bankruptcy actions filed by the borrowers, many of which loans were held by the [DOE]. The [DOE] also wanted a new guaranty agency to serve as a guarantor-of-last-resort in states in which the local guarantor exited the program, such as the Higher Assistance Foundation had done."

The loan at issue here apparently falls under the last of the purposes listed by Oxendine, as AGSLP assigned its loan to ECMC as a result of its winding up of its business affairs.

### III. The FDCPA and Guaranty Agencies Operating Under the FFELP

The FDCPA seeks to eliminate "abusive, deceptive, and unfair debt collection practices" and to protect consumers who have been victims of such practices. 15 U.S.C. § 1692; S.Rep No. 95-382, at 1-2 (1977) reprinted in U.S.C.C.A.N. 1695, 1696. The Act regulates the collection of "debts" by "debt collectors" by regulating the type and number of contacts a collector may make with the debtor. The limitations apply to all collection-related contacts, whether or not a debt is specifically mentioned. See FTC Staff Commentary on FDCPA, 53 Fed.Reg. 50103 (Dec. 13, 1988). For example, the FDCPA provides that a debt collector may not communicate with a consumer at any unusual time or place known, or that should be known, to be inconvenient to the consumer. 15 U.S.C. § 1692c (a)(1). A debt collector may not communicate with a consumer known to be represented by legal counsel or at the consumer's place of employment where on-the-job personal communications are prohibited. 15 U.S.C. § 1692c (a)(2). Contacts with the consumer's relatives, other than the spouse, violate the FDCPA. See West v. Costen, 558 F. Supp. 564, 570 (W.D. Va. 1983). Where the consumer has written to the debt collector to cease further communications, continued collection contacts violate the FDCPA. See Carrigan v. Central Adjustment Bureau, Inc., 494 F. Supp. 824 (N.D. Ga.

1980). Further, a debt collector is prohibited from communicating with someone other than the consumer, the consumer's attorney, the creditor and his or her attorney, the debt collector's attorney, and/or a consumer reporting agency, in attempting to collect the debt except to obtain location information.[4]

The FDCPA also prohibits harassing or abusive communications, 15 U.S.C. § 1692d (1)-(6),[5] and the communication of false or misleading representations in attempting to collect a debt. 15 U.S.C. § 1692(e). Section 1692(e) explicitly outlines 16 types of representations that amount to per se violations. For example, § 1692(e)(4) prevents collectors from falsely representing the potential results of nonpayment of the debt. Section 1692(e)(5) prohibits collectors from threatening to take action that is not intended or that amounts to a legal violation of the Act. Additionally, § 1692(e)(11) makes it the affirmative duty of the debt collector to "disclose clearly in all communications made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." Pelfrey claims that ECMC violated §§ (e)(4),(5) and (11) in attempting to collect on her defaulted loan.

If an agreement or arrangement does not amount to a "debt" for the purposes of the statute or if an individual or entity falls outside the Act's definition of "debt collector" the limitations and requirements established by the Act do not apply. Thus, the statutory definitions of both terms play a central role in delineating the scope and reach of the Act.

Under 15 U.S.C.A. §1692a(5), "[t]he term "debt" means any obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." The primary criterion of this definition is that the debt must be for consumer and not commercial purposes. Student loans such as that obtained by Pelfrey fall under the FDCPA's definition of "debt." See Carrigan, 494 F.Supp. 824 (N.D.Ga. 1980); see also Jones v. Intuition, Inc., 12 F.Supp.2d 775

---

[4] In seeking location information, the debt collector must identify himself but not discuss the debt. A debt collector may contact a third person to obtain location information only once unless the third person requests additional communications or the debt collector "reasonably believes" that the third person's response to the prior communication was erroneous or incomplete and that the third person now has correct or complete location information. 15 U.S.C.A. § 1692b(3). If the consumer is represented by an attorney, the debt collector may not communicate with any other person.

[5] Note that in Masuda v. Thomas Richards & Co., 759 F.Supp. 1456 (C.D.Cal. 1991), the district court held that a debt collector's mailing of 48 letters to the defaulting borrower in a period of eight months was not harassment and that a demand that the debtor assign insurance forms to the debt collector within a one week period was not oppressive.

(W.D.Tenn. 1998); Brannan v. United Student Aid Funds, 94 F.3d 1260 (9th Cir. 1996).

The disputed issue in this case is whether the defendant falls under the definition of "debt collector" as outlined in 15 U.S.C.A. §1692a(6). Under the FDCPA, the term "debt collector" is defined as follows:

[A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . .

15 U.S.C.A. §1692a(6). Without further limitation, this definition would include originating creditors seeking to collect on debts from their borrowers. However, the Act explicitly states that "creditors" are not bound by its restrictions. A "creditor," under the act, is one who: "offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. §1692a(4).

The Act also outlines a number of exceptions to the generalized definition of "debt collector." The definition of "debt collector" expressly states that the following are not "debt collectors" for the purposes of the FDCPA:

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any state to the extent that collecting or attempting to collect any debt is in the performance of his official duties;[6]

(D) any person while serving or attempting to serve legal process or any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors;

---

[6] The FDCPA broadly defines the term "state" as including "any State, territory, or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or any political subdivision of any of the foregoing." 15 U.S.C. § 1692a(8).

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity

    (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement;

    (ii) concerns a debt which was originated by such person;[7]

    (iii) concerns a debt which was not in default at the time it was obtained by such person; or

    (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C.A. § 1692a(6). Despite the lengthy definition, courts have had difficulty in some cases determining when an entity should be considered a "debt collector."

## IV. Legal Arguments

Defendant ECMC contends that it is excluded from the definition of "debt collector" because, under § 1692a(6)(A), it is a "creditor" seeking to recover on its own debt,[8] because it is a "government actor" as excepted in (6)(C), above, and because of the exception in (6)(F)(i) for those acting under a "bona fide fiduciary obligation." ECMC also contends that the regulations established by the FFELP for guaranty agencies are inconsistent with the demands made of "debt collectors" under the FDCPA and that the FDCPA should, therefore, not apply to guaranty agencies, such as itself, operating under the FFELP. Pelfrey maintains that ECMC is subject to the FDCPA. She asserts that the FDCPA was intended to apply to private nonprofit guaranty agencies operating within their own discretion, even if contractually bound to follow DOE regulations,

---

[7] The "originator" exception may extend to an entity besides the original lender, provided that entity played a significant role in the loan transaction from its inception. For example, a bail bondsman which played a significant role in originating a bail bond contract was exempt from the FDCPA when it tried to collect on an interrelated indemnity agreement and promissory note given as collateral. Buckman v. American Bankers of Florida, 115 F.3d 892, 895 (11th Cir. 1997). See also Holmes v. Telecredit Service Corp., 736 F.Supp. 1289, 1293 (D.Del.1990) ( "The original lender is covered by § 1692a(6)(A)'s exception for creditors. If the exception in § 1692a(6)(F)(ii) extended only to original lenders, it would be superfluous. The exception must therefore apply to entities besides the original lender that play a significant role in the transaction from its origination."); Games v. Cavazos, 737 F.Supp. 1368, 1386 (D.Del.1990) ("the exceptions for persons who 'originate' a debt refers to persons other than the original lender"). However, in deciding whether the term could be extended to include a guaranty agency, the Games court found that "[t]he "origination" definition in the regulations does not include guarantee agencies." Games, 737 F.Supp. at 1387. Defendant has not argued that it falls under this exception.

[8] Courts have generally accepted a construction of the statute that recognizes that this exception was intended to cover creditors themselves as well as their employees. Kimber v. Federal Financial Corp., 668 F.Supp. 1480, 1484 (M.D.Ala.1987) (citing S.Rep. No. 95-382, 95th Cong., 1st Sess., reprinted in 1977 U.S.Code Cong. & Admin.News 1695); Games v. Cavozos, 737 F.Supp. 1368, 1386 (D.Del. 1990).

and that ECMC is, in fact, nothing more than a government contractor who, like most other private government contractors, should be subject to the FDCPA's requirements. Pelfrey directly opposes ECMC's assertion that it is a "government actor" for the purposes of the § 1692a(6)(C) exception and contends that the FFELP and FDCPA are not incompatible or inconsistent. Further, as a policy matter, Pelfrey decries the injustice that could result if agencies such as ECMC are not made subject to the FDCPA.

### A. "Creditor" Status Under the FDCPA

ECMC contends that guaranty agencies operating within the strictures of the FFELP are not third party debt collectors. Rather, defendant argues that guaranty agencies, once assigned an account, are creditors seeking to collect on their own debts and should be excepted from the definition of "debt collector" under § 1692a(6)(A) of the FDCPA. Courts have held that when a guarantor pays a debt under the terms of its guaranty, the defaulting borrower then owes the guarantor directly. National Can Corp. v. U.S., 520 F.Supp. 567, 580 (N.D.Ill. 1981), aff'd 687 F.2d 1107 (7th Cir. 1982) (where the guarantor discharges the obligation of a principal debtor, "the law raises an implied promise on the part of the principal to reimburse the guarantor"); Scott v. Norton Hardware Co., 54 F.2d 1047 (4th Cir. 1932) (guarantors, having been required to make payments under guaranty, became entitled to recover payments as "creditors" of bank furnishing bond). According to ECMC, this direct relationship with the borrower created by the guarantor's payment to the lender puts the guarantor in a position akin to that of a creditor. The guarantor, in attempting to collect on the debt, is not attempting to collect the debt of another, but is legitimately attempting to collect on its own debt, even if the debt was in default when paid by the guaranty agency. Here, ECMC claims that it should be considered a guaranty agency because it was assigned the debt as a result of the original guarantor's winding-up of affairs, because it now holds title to the note, and because the DOE considers its role to be that of a guarantor.[9]

Defendant asserts that both the Federal Trade Commission ("FTC"), the agency that enforces the FDCPA, and the DOE, the agency charged with operating the FFELP, support its position. Defendant's assertion regarding the FTC is based on a 1988 opinion letter written by a member of the Staff of the Division

---

[9] Pelfrey would apparently contend that ECMC is not a guaranty agency in regard to her note or would assert that the label is superfluous and that ECMC should be analyzed solely in the context of a private nonprofit corporation performing services. She states in her response that ECMC was not the guarantor of her loan, and concludes that a debt collector such as ECMC is not excluded from the definition of "debt collector" in the FDCPA. She refers to ECMC as a "debt collector" a number of times, and presents evidence indicating that third party debt collectors are, according to the DOE and Treasury Department, subject to the FDCPA, but does not directly address the question of whether ECMC is a guaranty agency as referred to by the DOE.

of Credit Practices of the FTC. In that letter, the staff member stated that a guaranty agency:

> [P]urchases student loans, which are in default status, from commercial lending institutions. In purchasing these defaulted loans, [the guaranty agency] legally becomes the owner of the debts. When [the guarantor] tries to collect these obligations, [the guaranty agency] acts as a creditor collecting its own debt in its own name and is therefore exempt from the definition of debt collector under Section 803(6)(A) of the [FDCPA].

Defendant claims that this remains the FTC's official position. Further, according to the testimony of DOE official Larry Oxendine, the conclusion reached in this letter has been disseminated by the DOE to the student loan industry since 1988. Defendant thus contends that both agencies support its contention. Defendant also argues that, under Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837 (1984), the court should acquiesce to the position of the FTC on this matter, as the FTC is entitled to deference in interpreting the FDCPA to the extent that the statute is ambiguous.

In essence, ECMC asks the court to find that, in enacting the FDCPA, Congress did not intend to regulate the activities of guaranty agencies such as itself and that Congress did not intend guaranty agencies to fall within the admittedly broad definition of the term "debt collector." In addition to citing DOE and FTC opinions, ECMC maintains that the limited case law addressing this issue supports the conclusion that guaranty agencies under the FFELP are creditors rather than debt collectors as defined by the FDCPA. For instance, in Games v. Cavozos, 737 F.Supp. 1368 (D.Del. 1990), the plaintiff, a student loan borrower, brought a claim similar to Pelfrey's, arguing that the private nonprofit guaranty agency that guaranteed his student loans sent him communications violating the FDCPA. The district court found that the Congress did not intend the FDCPA to apply to notices sent by private guaranty agencies operating under the FFELP (then GSLP). The district court judge went on to state that: "[U]nlike a typical debt collector, [a guaranty agency] is involved with Guaranteed Student Loans from the moment the loan is made. . . I am convinced that Congress did not intend the FDCPA to apply to guarantee agencies administering the GSL Program in cooperation with [the DOE]." 737 F.Supp. at 1389.[10]

---

[10] Despite the statement cited by ECMC, the Games court was not so straightforward in making its determination with regard to whether the agency was a "creditor". The language cited by ECMC was not based on any construction of § 1692a(6), but on the court's conception of Congress's intent when it passed the FDCPA. In addressing whether the guaranty agency at issue in the case was a "debt collector" under the general definition of the term and whether it was a "creditor" excepted by § 1692a(6)(A), the court stated as follows:

> USA Funds' next argument is that it is not a debt collector because it is not collecting or attempting to collect debts owed or due another. USA Funds argues that it acquired the debt upon payment to the lender and consequently, it was attempting to collect debts owed to itself. The argument does

In Edler v. Student Loan Marketing Association, 1993 W.L. 625570 (D.D.C. 1993), the United States District Court for the District of Columbia dismissed an FDCPA claim brought by a borrower against his guaranty agency in a single sentence, stating: "The FDCPA is inapplicable to [the guaranty agency] as a matter of law because [it] is a guaranty agency and not a debt collector within the meaning of the statute." Id. at 2. The defendant argues that Fischer v. Unipac Service Corp., 519 N.W.2d 793 (Sup. Ct. IA 1994), is analogous to Edler. In Fischer, the Iowa Supreme Court concluded that a student loan servicer was not subject to the FDCPA because "holders of federally insured student loans or their servicing companies are simply not the

_____

not fly. Although USA Funds may have had title to Games' debt at one time, the guarantee agency must assign the loan to [the DOE] prior to sending the 65- day letter. Title technically rested in [the DOE] at the time the notices were sent. Therefore, for purposes of the notices, the debt was owed or due to [the DOE], not USA Funds. Even though the assignment to [the DOE] was conditional and temporary, it was an assignment nevertheless. Thus, for purposes of sending the notices the debt was owed or due to another, and USA Funds meets the general definition of a debt collector set forth in § 1692a(6).

Games, 737 F.Supp. at 1385. The court went on to state:

USA Funds argues that it is a creditor and thus excluded from coverage under the Act by § 1692a(6)(A) . . . The Act defines a "creditor" as:

[A]ny person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C.A. § 1692a(4). For purposes of sending the notices, USA Funds is not a creditor. Although it may have guaranteed the loan, it did not offer or extend credit. The regulations specifically define "lender" for purposes of the Guaranteed Student Loan Program. See 34 C.F.R. § 682.200. That definition does not encompass guarantee agencies, which are defined elsewhere in that subsection. Further, at the time the notices were sent, the debt was not owed to USA Funds. For purposes of sending the notices in question, USA Funds is not a creditor within the meaning of the Act.

Even if USA Funds were considered a creditor under the definition set out in § 1692a(4), it falls under the exception for assignees. Section 1692a(4) excludes from the definition of creditor "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." The lender did not transfer title to the debt to USA Funds until after default. Had Games made timely payments, USA Funds would never have received title to the loan. It is clear, therefore, that Wilmington Trust Co. transferred the loan to USA Funds after default to facilitate collection.

Id. at 1385-1386. Hence, it is doubtful that the Games court, in analyzing this case, would consider ECMC to be a "creditor". The Games court's decision that guaranty agencies involved in FFELP loans are excepted by § 1692a(6) was based on the "government actor" exception in § 1692a(6)(C) and on its assertion, based on Congress's stated intentions in passing the FDCPA, that Congress did not intend to regulate the type of activity that guaranty agencies operating under the FFELP engage in. See Id. at 1388-1389; S.Rep. No. 95-382, 95th Cong., 1st Sess., reprinted in 1977 U.S.C.C.A.N. 1695, 1696.

kind of activity Congress intended to regulate." Id. 519 N.W.2d at 800.[11]

    Thus, the defendant, looking to the opinion letters of the FTC and DOE and to the decisions in Games, Edler and Fischer, argues that guaranty agencies operating within the framework of the FFELP are "creditors"

---

[11] Note, however, that both Edler and Fischer involved administrative student loan agencies that began servicing the loans in issue prior to the debtor's default. In Edler, the servicing agency that became involved with Edler's loans after the alleged default was deemed to fall under the definition of debt collector. The guaranty agency, which had apparently guaranteed the loan from the beginning, was excepted. The district court judge in Edler stated the facts as follows:

    Edler took out numerous student loans while in college and dental school. These loans were purchased by Sallie Mae and serviced by EduServ. Around October 9, 1989, Edler entered into a loan consolidation plan agreement ("SMART LOAN") with Sallie Mae. This plan is an agreement by which Edler is obligated to pay an agreed sum of money periodically, and Sallie Mae is obligated to consolidate and transfer the loans from EduServ. Edler alleges that Sallie Mae negligently failed to consolidate these loans and they were allowed to remain at EduServ even though Edler pays and continues to pay the consolidated loan amount. Although plaintiff allegedly notified Sallie Mae of the problem, [FN3] EduServ still declared Edler in default, and Sallie Mae referred the loans to HEAF who instituted formal collection proceedings against Edler. Edler claims that these proceedings, based on an erroneous default, resulted in derogatory remarks being made against him, harassing and threatening telephone calls and letters, as well as credit denials.

Edler, at 1.

    In determining whether any of the defendants in the case were subject to the requirements set out in the FDCPA, the judge stated:

    The FDCA specifically excludes from its coverage "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person. 15 U.S.C. § 1692a(6)(F)(iii). Because Elder's loans were not in default when EduServ began to service them, the FDCA is inapplicable to EduServ as a matter of law. The FDCA is also inapplicable to HEAF as a matter of law because HEAF is a guarantee agency and not a debt collector within the meaning of the statute. The FDCA is only applicable to DCS who did begin to service Edler's loans when they were in default.

Edler, at 2.  Note that the Edler court did not provide any basis or citation for ruling that guaranty agencies are not subject to the FDCPA.

    In Fischer, the Iowa Supreme Court found that:

    [A] debt collector does not include any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person. By its plain terms the FDCPA does not apply here because Fischer was not in default at the time UNIPAC began servicing his loans.

Fischer, 519 N.W.2d at 799.

    The United States District Court for the Western District of Tennessee has also ruled that a servicing agency that begins servicing a loan prior to default is not a "debt collector" under the FDCPA exception for collection agencies engaged in the collection of debt not yet in default at the point in which the agency develops an interest in the debt. Jones v. InTuition, Inc., 12 F.Supp.2d 775 (W.D.Tenn. 1998); 15 U.S.C. § 1692a(6)(F)(iii).

and are not "debt collectors" as defined in the FDCPA and as understood by Congress in promulgating the FDCPA, and therefore, do not fall into the category of actors that Congress sought to regulate when it passed the Act.

ECMC notes that Pelfrey's response to its summary judgment motion and brief argues that ECMC is subject to the FDCPA because it is a private collection agency not governed or controlled by regulation. In other words, she argues that ECMC is solely a creature of contract. ECMC claims that Pelfrey's characterization is incorrect and based on a misunderstanding of the operations and purpose of guaranty agencies such as itself. ECMC points out that its practices are governed by extensive regulations promulgated by the DOE in 34 C.F.R. Part 682, Subpart D, which is entitled "Administration of the Federal Family Education Loan Program by a Guaranty Agency." The regulations contain a number of regulations outlining conditions for the existence, operation and activities of guaranty agencies under the FFELP. Further, ECMC points to Oxendine's testimony as to the fact that ECMC was created at the behest of the DOE for the purpose of administering and attempting collection of certain classes of loans.

### 1. Pelfrey's Response

Pelfrey claims, based on 63 Fed. Reg. 87, 25137 (1996), that the Department of the Treasury considers the FDCPA applicable to collection agencies collecting student loans.[12] She also states, citing 61 Fed. Reg. 230, 60484-60485 (1996), that it is undisputed that the FDCPA applies to contractors collecting debts for others.[13] Pelfrey also contends that ECMC is, essentially, a private contractor which has contracted with the

---

[12] It is unclear how plaintiff came to this conclusion, the FDCPA is mentioned on page 25137 of the Federal Register, as cited, but the position of the Treasury Department regarding private collection agencies is presented as follows:

> One commenter suggested that the rule exempt private collection professionals acting on behalf of agencies from the liability of the [FDCPA], provided that such entities comply with [the pertinent Treasury rules]. The extent to which the FDCPA may apply to any entity, particularly private collection agencies, is outside the scope of this rule.

63 Fed. Reg. 87, 25137 (1996).

[13] Pelfrey does not note, however, that the same comment of the DOE states that guaranty agencies are not, in its view, subject to the FDCPA. In 61 Fed. Reg. 230, 60484-60485 (1996), the DOE states:

> It has been the longstanding view of the Secretary and the [FTC] that the FDCPA does not apply to guaranty agencies collecting defaulted FFEL Program loans in their own names and protecting the financial interests of their guarantee programs. The FDCPA does not apply to an entity collecting a debt it is owed. Moreover, application of the FDCPA to the guaranty agencies would potentially penalize them for compliance with the requirements in 34 C.F.R. 682.410 and, thus, is inconsistent with the Secretary's goal of ensuring a minimum standard of collection action. The Secretary notes, however, that the FDCPA clearly applies to a collection contractor acting for the guaranty

government to provide services, and that the agency is not truly controlled or governed by statute or regulation, but by contract.

Pelfrey notes that the HEA allows, but does not require, the DOE to contract with private entities to perform certain functions related to the GSL program and that, if it so desired, the DOE could collect the debts itself, using government employees. Pelfrey states that the regulations promulgated by the DOE include a minimum schedule of contacts, due diligence in collection activities, and a "generalized" requirement to communicate to the debtor the importance of repayment. She notes that for-profit lenders are subject to nearly identical minimum contact guidelines under 34 C.F.R. § 682.411. Pelfrey argues, based on the similarity between the regulations for nonprofit and for-profit corporations, that ECMC, like the for-profit corporations, should be subject to the FDCPA. She contends that ECMC's relationship with the DOE is purely contractual, and that the provisions of the contractual relationship incorporate regulatory requirements imposed by the DOE. The regulations are made part of the contractual provisions, according to Pelfrey, in order to assure the DOE that agencies are diligently working toward collection of the debts. She argues that private contractors should not be clothed with governmental immunities simply because their contracts with the government involve requirements set out in Federal Regulations. Under Pelfrey's analysis, ECMC is no different from any normal private collection or guaranty agency and should not, therefore, be granted "creditor" status.

Pelfrey also points out that ECMC was not the guarantor for her student loan and that ECMC did not, in fact, exist until after the loan was in default. She impliedly argues that ECMC cannot be considered anything but a debt collector given the scope of its involvement with her loan. ECMC counters this argument by explaining that the loan was not originally transferred to ECMC for collection, but for bankruptcy servicing and that ECMC was, in essence, replacing the former guarantor, the Alabama Guaranteed Student Loan Corporation, which was winding up its operations. ECMC took no collection action on Pelfrey's loan until after Pelfrey's discharge from bankruptcy.

### B. The "Bona Fide Fiduciary Obligation" Exception of 15 U.S.C. § 1692a(6)(F)(i)

ECMC argues that, even if it does fall within the general definition of "debt collector" as stated in the FDCPA, it falls within the §1692a(6)(F)(i) exception for entities attempting to collect on the debt of another under a "bona fide fiduciary obligation." In so arguing, ECMC points to the numerous relationships and connections created between the the United States government and guaranty agencies under the FFELP.

---

agency. Such contractors are collecting a debt owed to another and are clearly subject to the FDCPA.

61 Fed. Reg. 230, 60484-60485 (1996).

Although noted above, these connections are worth reviewing:

> (1) The DOE supports guaranty agencies by providing reinsurance on their guaranty payments, by providing loans to cover the payments and to capitalize reserve funds, and by making payments to defray certain administrative expenses. 20 U.S.C. §§ 1072(a), (c); 1078(f).
>
> (2) Guarantors must deposit virtually all payments and earnings received in connection with their guarantee operations into their reserve fund. A significant portion of the assets of the reserve funds are the defaulted student loans acquired by the guarantors upon payment of the original principal obligation to the lender. The assets comprising the reserve fund of an agency are the property of the United States.
>
> (3) The Secretary of Education has substantial authority to prevent expenditures from the fund and to order the transfer of fund assets from one agency to another.
>
> (4) Guarantors are routinely reimbursed by the DOE promptly after paying a claim and thereafter hold and collect the loans subject to the right of the DOE to demand assignment when deemed appropriate. 20 U.S.C. § 1078(c)(1)(A)(8).

ECMC argues that the connection created between the government and a guaranty agency, as a result of the reserve fund and of its obligation to the DOE, clearly places the agency in the position of a fiduciary.

ECMC also argues that both the DOE's position in reference to guaranty agencies under the FFELP and case law support the conclusion that the agencies are fulfilling a "bona-fide fiduciary obligation" when attempting to collect FFELP debts. Again, ECMC points to the testimony of Larry Oxendine, the Director of Lender and Guarantor Oversight for the DOE. In his affidavit testimony, Oxendine testified that:

> Student loan guarantors collect FFELP loans pursuant to a fiduciary obligation because they use reserve funds to acquire these loans; they hold the loans, like all other assets of those reserve funds, subject to the statutorily-recognized beneficial ownership interest; and they collect them pursuant to their obligation as a fiduciary of the Federal government.

According to ECMC, Oxendine's rendition of the DOE's position is consistent with past observations made by DOE officials. In support of that claim, ECMC cites two DOE statements made in the Federal Register regarding guaranty agencies and the FFELP:

> A party who holds property for the benefit of another and who must carry out specific duties with regard to that property falls clearly within the legal definition of a trustee. A trustee owes a fiduciary duty to the beneficiary. In the case of guaranty agencies, the Secretary (who provides the funds used to maintain the reserve funds assets) is the beneficiary and is entitled to issue appropriate rules to protect the Federal Government's interests in those funds and assets by prohibiting inappropriate uses and protecting against conflicts of interest.

61 Fed. Reg. 60,426, 60,427 (Nov. 27, 1996) (internal citations omitted).

> In light of its role in the program and its responsibility for holding and protecting Federal fund, the guaranty agency's role is best characterized as that of a trustee holding money for the benefit of another. Under these circumstances, a guaranty agency is responsible for action as a fiduciary responsible for protecting the interests of the Department and the taxpayers in the reserve funds.

61 Fed. Reg. 49382 (Sept. 19, 1996) (internal citations omitted).

The only case explicitly addressing the issue of whether a guaranty agency falls within the "bona fide fiduciary obligation" exception of §1692a(6)(F)(i) is Davis v. United States Aid Funds, Inc., Case No. 97-1151-MLB (D.Kan. Sept 18, 1998). In Davis, the district court, in granting a 12(b)(6) motion to dismiss, found that a nonprofit student loan guaranty agency was a fiduciary as excepted in (F)(i), and thus concluded that the agency was not a "debt collector" under the FDCPA. The Davis court found the statements of the DOE particularly persuasive, concluding:

> As a general proposition, if Congress has been silent on an issue, a particular agency "possesses broad discretion in administering the law so long as its actions are based on a permissible construction of its enabling statute." Valley Camp of Utah, Inc. v. Babbitt, 24 F.3d 1263, 1267 (10th Cir. 1194) . . . An agency possesses this discretion for its interpretations as well as its actions, and courts should be particularly deferential to an agency that is interpreting regulations promulgated by itself. Culbertson v. United States Dept. of Agriculture, 69 F.3d 465, 467 (10th Cir. 1995); [additional citations omitted]. An agency's interpretation of its own regulation should be disturbed only if the interpretation is "unreasonable, plainly erroneous, or inconsistent with the regulation's plain meaning." Id. Without question, the court finds that the statements at issue from the Secretary of Education are neither unreasonable, plainly erroneous, nor inconsistent with the regulations' plain meaning. In fact, the statements appear to provide clear guidance in regard to how a guaranty agency's role should be perceived as it holds, protects, and carries out duties in relation to federal funds.

Davis, at page 9 of the Memorandum and Order. In arguing that courts have ruled similarly in other factual contexts, ECMC cites two other cases, Education Assistance Corp. v. Cavozos, 902 F.2d 617 (8th Cir. 1990), cert. denied, 111 S.Ct. 246 (1990), and Ohio Student Loan Commission v. Cavozos, 900 F.2d 894 (6th Cir. 1990), cert. denied, 111 S.Ct. 245 (1990). Although not decided in the context of the FDCPA, both cases hold that guaranty agencies are fiduciaries for the Federal government with respect to their reserve funds.

Because an agency's collection activities are important in maintaining the reserve funds, ECMC argues that a guaranty agency is a fiduciary in that capacity as well, and should, under reasoning of the above decisions, be excluded from the definition of "debt collector." ECMC claims that the generalized argument in favor of considering guaranty agencies as fiduciaries, when applied to its own position relative to the DOE, is even more persuasive. ECMC contends that because it was created at the behest of the DOE to perform specialized guarantor services and because ECMC's reserve funds are transferred each year to the DOE,

ECMC is involved in an even more tightly-knit relationship with the DOE and is clearly acting as the DOE's fiduciary in collecting FFELP debts and should not be subject to the restrictions of the FDCPA. ECMC thus calls for this court to follow in the footsteps of the Davis court in concluding that guaranty agencies involved with the FFELP fall within the "bona fide fiduciary obligation" exception of the FDCPA definition of "debt collector."

### 1. Pelfrey's Response

Pelfrey has not directly addressed ECMC's claim that it falls within the "bona-fide fiduciary obligation" exception of the FDCPA. However, her argument regarding the contractual nature of ECMC's relationship to the DOE is probably relevant to the issue of whether ECMC acts under a fiduciary obligation when attempting to collect on student loans. Her likely argument is that, as an independent contractor, ECMC's duty to the DOE is based purely on contract rather than on any fiduciary obligation and that her relationship with the DOE is not close enough to give rise to any fiduciary duty.

### C. The "Government Actor" Exception of 15 U.S.C. §1692a(6)(C)

As stated above, the FDCPA excludes "any officer or employee of the United States or any State," from the definition of "debt collector," "to the extent that collecting or attempting to collect any debt is in the performance of his official duties." Case law has established that this provision excludes state-run guaranty agencies from the Act's requirements. See Games v. Cavazos, 737 F.Supp. 1368 (D.Del 1990);[14] Jones v. InTuition, 12 F.Supp.2d 775 (W.D.Tenn. 1998) (state agency created to guarantee and administer student

---

[14] The Games court made clear its view that state-operated guaranty agencies fell within the (6)(C) exception:

> The Guaranteed Student Loan Program may be administered by either a State guarantee agency or a private non-profit agency such as USA Funds. 20 U.S.C.A. § 1072(a)(1) ( "[T]he Secretary [of Education] is authorized to make advances to any State with which the Secretary has made an agreement ... for the purpose of helping to establish or strengthen the reserve fund of the student loan insurance program covered by that agreement. If for any fiscal year a State does not have a student loan insurance program covered by an agreement ... the Secretary may make advances for such year for the same purpose to one or more nonprofit private institutions.... The Secretary may make advances ... both to a State program ... and to one or more nonprofit private institutions or organizations ... in that State if he determines that such advances are necessary in order that students in each eligible institution have access ... to a student loan insurance program...."); 34 C.F.R. § 682.200 (1984) ( "Guarantee agency: A State or private nonprofit agency that administers a student loan insurance program."). It would be incongruous to hold USA Funds to the requirements of the FDCPA when it administers the very same federal government loan program as the State guarantee agencies that are excepted by § 1692a(6)(C)'s exception for government actors.

Games, 737 F.Supp. at 1388.

assistance programs was a government actor exempt from suit under FDCPA). ECMC claims that private, nonprofit guaranty agencies operating within the strictures of the FFELP should be excluded under this provision.

ECMC acknowledges that the guaranty agencies are not technically "employees" of a State or the United States, but maintains that such agencies, in handling and facilitating federally insured loans, perform the exact same functions as do their state-run counterparts and that they should, therefore, enjoy the protection of §1692a(6)(C). ECMC again points out that is was created by the DOE for the express purpose of undertaking guarantor functions for that department. ECMC argues that this fact weighs in favor of considering it a "government actor" for the purposes of the FDCPA.

### 1. Implications of Brannan v. United States Aid Funds, Inc., 94 F.3d 1260 (9th Cir. 1996)

ECMC recognizes that the holding in Brannan v. United States Aid Funds, Inc., 94 F.3d 1260 (9th Cir. 1996), cert. denied, 117 S.Ct. 2484 (June 23, 1997), directly opposes its position regarding guaranty agencies and the government actor exception. In Brannan, a student debtor asserted FDCPA claims against the private nonprofit guaranty agency that had guaranteed his loan. The district court granted summary judgment in favor of the guarantor, holding that it was a government actor for the purposes of the FDCPA. The Ninth Circuit reversed the district court's ruling, holding that the guarantor was subject to the FDCPA, and that the exception for government actors "applies only to an individual government official or employee who collects debts as part of his government employment responsibilities. [The guaranty agency] is a private, nonprofit organization with a government contract; it is not a government agency or employee." Id. at 1263. The Ninth Circuit also stated that "[t]he FDCPA does not provide an exemption for guaranty agencies that acquire a student loan after default in order to pursue its collection. The Secretary of Education has also explicitly stated that [FFELP] third party collectors and their collection activity 'remains subject to the FDCPA.'" Id. at 1262, quoting the DOE's comments at 55 Fed. Reg. 40120, 40121 (1990).

ECMC argues that the Brannan court was wrong in deciding that the guaranty agency was not a government actor and that this court should not rely upon Brannan in deciding this case. ECMC claims that the Brannan decision is incorrect in that the decision: (1) contradicts the current position of the FTC and DOE on the issue; (2) misinterpreted the DOE's position on the issue when the case was decided; (3) failed to acknowledge or address the holding and/or reasoning in a district court case analyzing the same issue and reaching a contrary conclusion; and (4) should not, even if considered applicable on the issue of whether ECMC was a "government actor," apply to ECMC's other contentions.

ECMC claims that the Brannan court's conclusion conflicts with the stated position of both the DOE

and the FTC.  Larry Oxendine's testimony indicates that the DOE "believes [Brannan] was incorrectly decided."  Additionally, the FTC letter provided by ECMC and quoted, supra, indicates the FTC's view that guaranty agencies are not subject to the FDCPA.

ECMC also argues that the holding in Brannan appears to have resulted, in part, from what ECMC views as the Ninth Circuit's misinterpretation of the DOE's comments at 55 Fed. Reg. 40120, 40121 (1990). The DOE's statements, according to ECMC's argument and Oxendine's testimony, were meant to refer only to "third party collectors" in the conventional sense – as parties distinct from the two parties to the loan contract or their assignees.  Under Oxendine's interpretation of the comment, the DOE was not referring to guaranty agencies.  According to Oxendine, the DOE learned of the Brannan ruling only after the above comment had been issued, and was thus unable to present the FTC precedent and to clarify its own position to the Brannan court.

ECMC also criticizes the Brannan decision for its failure to note or address the holding of the United States District Court for Delaware in Games v. Cavazos, supra.  Games involved a claim brought by a student loan borrower under the FDCPA against the private nonprofit guaranty agency that guaranteed his student loans.  The Games court held that guaranty agencies were not meant to be covered by the FDCPA based on the "government actor" exception.  The factual situation in Games differed from the situation in this case in that the agency in Games was not holding the plaintiff's note, rather, the note had been transferred to the DOE for a tax offset proceeding.  As the DOE was the holder of the note, the Games court concluded that the agency was not seeking to collect its own debt and could not qualify as a creditor under the FDCPA.[15] .However, the court found that the guaranty agency was protected from subjection to the FDCPA by the government actor exception in §1692a(6)(C), stating:

> It would be incongruous to hold a [private guaranty agency] to the requirements of the FDCPA when it administers the very same federal government loan program as the state guarantee agencies that are excepted by § 1692a(6)(C) . . . Moreover, as stated above, [a private guaranty agency] administers a federal government program involving federal funds.  In some sense therefore, it is a federal government actor. . . Finally, and alternatively, the sending of these notices by [the guaranty agency] and other private guaranty agencies in connection with their administration of the [FFELP] is simply not the kind of activity Congress intended to regulate.

Id., 737 F.Supp. at 1388, 1389.  ECMC argues that the Games decision is better reasoned than Brannan and that Brannan, in finding against the agency, should have addressed the arguments made by the Games court.

---

[15]  ECMC argues that its situation is different in that respect and that ECMC is collecting on its own debt because it is still the holder of the note.

The failure of the Brannan court to do so indicates, according to ECMC, that the Brannan court did not fully consider the issue and may have based its holding on misconceptions about guaranty agencies operating under the FFELP. ECMC argues that this court should, therefore, ignore the holding in Brannan and decide this case based upon the reasoning in Games.

Finally, ECMC contends that the Brannan holding should be considered decisive, if at all, only on the issue of whether a private nonprofit guaranty agency falls under the "government actor" exception, not on the broader issue of whether such an agency should be subject to the FDCPA. While the Brannan court did hold that the guaranty agency involved in that case was subject to the FDCPA, it did not consider whether the agency was a "creditor" under the Act or whether it was operating according to a "bona-fide fiduciary duty." The Brannan decision explicitly notes, in fact, that the agency in question conceded for the purposes of the appeal that it was a "debt collector" under the FDCPA. ECMC has made no such concession and has argued that it is a fiduciary under the Act. ECMC thus argues that, even if this court does agree with the Brannan decision, such agreement disposes of only one of its argued-for grounds for summary judgment.

### 2. Pelfrey's Response

In opposing ECMC's Motion for Summary Judgment, Pelfrey argues that Brannan is applicable to this case and that it directly contradicts the defendant's position. Pelfrey states that ECMC is not an employee or an officer of the United States and was not acting within the bounds of any official duty to the United States when it violated the FDCPA and should be subject to the Act's requirements.

Pelfrey notes that ECMC has acknowledged that it is a private non-profit corporation and argues that, had it intended to do so, Congress could have and would have clearly excluded agencies such as ECMC from application of the FDCPA's provisions. However, Pelfrey contends that, although it has excluded state agencies and some nonprofits under § 1692a(6), Congress has not specifically excluded agencies such as ECMC. Pelfrey thus looks to Foxgord v. Hischemoeller, 820 F.2d 1030 (9th Cir. 1987), cert. denied, 484 U.S. 986 (1987), holding that where a statute names parties who come within its provision, other unnamed parties are excluded. Because private guaranty agencies are not explicitly named under the exclusions in the statute, Pelfrey argues that they are subject to the FDCPA.

In Olson v. Lake Country, Inc., 955 F.2d 203 (4th Cir. 1992), the Fourth Circuit held that while currative legislation designed to cure what Congress perceived as a defect in prior law is entitled to particular deference and should be construed liberally, the general rule of statutory construction is that exemptions from remedial statutes are to be construed narrowly. Pelfrey notes that Congress has not attempted to modify the FDCPA to expressly exclude entities such as ECMC, although it has made changes in the applicability of the

Act to certain entities/individuals as recently as 1986, when it repealed the exemption for attorneys. In I.N.S. v. Hector, 479 U.S. 85 (1986), the Supreme Court held that where the language of a statute has been subject to repeated statutory amendments, courts are especially bound to pay heed to the plain language of the statute. Pelfrey argues that the holding in Hector applies here and that the plain language of the statute does not exclude ECMC. According to Pelfrey, the reasoning used by the Supreme Court in Connecticut National Bank v. Germain, 112 S.Ct. 1146 and the Ninth Circuit in Stewart v. Rapland, 934 F.2d 1033 (9th Cir. 1992), suggests a presumption that Congress did not overlook entities to which the FDCPA scheme would apply in promulgating a statute focused on the collection of debts.

Pelfrey argues that it is not incongruent to find that a private nonprofit corporation contracting with the United States should be treated differently than a state agency contracting with the United States. The regulations directly applicable to this case, according to Pelfrey, recognize the distinction and actually differentiate between State governmental entities and private entities. She claims that the provisions of 34 C.F.R. § 682.410(b)(1)(v) indicate that the federal government recognized the "protection inherent in State governmental activities," and did not suggest that the distinct treatment given to State agencies as opposed to private non-profits is inconsistent. Pelfrey contends that the distinction made in the statute evidences the fact that Congress recognized that State agencies are subject to scrutiny and accountability to the legislature or their constituents for failure to act fairly and reasonably in enforcement of regulatory requirements, while agencies like ECMC are not subject to the same consequences.[16] Thus, Congress elected not to provide the private agencies with the same protections. Again, Pelfrey argues that this case involves a private entity that has contracted with the government. Section 1692a(6)(C), according to Pelfrey, was simply not meant to create such protections for private corporations.

### 3. Applicability of the Games Decision

In addressing the applicability of the Games decision to this case, Pelfrey contends that the Games decision is distinguishable and that the Games court's reasoning should not be extended to include the factual scenario presented in this case. The guaranty agency in Games argued that it was excluded from the FDCPA for the purpose of sending a tax intercept notice because:

In a situation such as this, where [the agency] has absolutely no discretion as to the form or content of the notice which is sent in order to implement a federal program should be construed as an attempt by the United States to collect a debt, bringing the matter within the scope of the exclusion provided for in FDCPA1692a(6)(C).

---

[16] This argument tends to overlook federal regulations and DOE oversight.

737 F.Supp. at 1387. Pelfrey notes that the Games court relied on Heredia v. Green, 667 F.2d 392 (3rd Cir. 1981) in deciding that the guaranty agency acted as a government actor. In Heredia, a Judge provided instructions and authorization for two notices of termination of lease, to be served upon an individual, to a court official. The court official delivered the notices and the deliveree filed suit under the FDCPA. The Heredia court found that the government actor exception applied in that the official had little discretion in the matter and in that the matter involved an important government purpose. Id. at 395. The Games court noted that the court officer in Heredia did not fall under the exception because he was a government official, but because his actions were performed within the scope of his official duties. Pelfrey points out that the court in Games concluded that the guaranty agency, although not a government official, fell under the government actor exception because it was contractually bound to follow specific procedures and the entire procedure followed by the agency was described in the contract, the governing statutes, and the regulations. Games, at 1388.

This case is distinguishable from Games, according to Pelfrey, in that ECMC acted without the type of guidelines found in the Games situation. Pelfrey argues that neither Games nor Heredia establishes that an agency defendant will never be liable under the FDCPA, and that both left open the question of whether private entities engaged in discretionary or harassing/abusive conduct could seek shelter under the government actor exception.

According to Pelfrey, Games extended the FDCPA exclusion clause to include a contracting nonprofit corporation for a limited purpose involving non-discretionary activities. She urges the court not to further extend the exclusion to, what she terms, private nonprofit corporations contracting with the government to collect governmental debts whether or not the corporation is given strict guidelines for its collection activities. Pelfrey claims that ECMC, if excepted from the FDCPA, would be given the authority to, without impunity, engage in a number of unfair and harassing collection practices – the type of practices the FDCPA was intended to halt. The Games court, in reaching its decision, noted that there was no allegation of abusive or harassing actions on the part of the guaranty agency. Further, in Games, the account had been sent to the DOE and returned to the agency for the purpose of sending the collection letters. In this case, Pelfrey has alleged abusive tactics and the account has never been referred to the DOE. Pelfrey thus claims that extension of the Games holding to the facts of this case would be improper and that the generalized holding of Brannan should control the court's decision. She thus urges this court to conclude that an issue of material fact exists as to whether ECMC improperly exercised its discretion in attempting to collect her loan.

### D. Conflicts Between FDCPA and FFELP Provisions

ECMC maintains that application of FDCPA provisions to guaranty agencies operating under the

FFELP would impose inconsistent obligations upon the agency and that, in order to perform under the FFELP, an agency must be free from FDCPA requirements. ECMC contends that the statutes conflict in several significant areas:

(1) FFELP regulations require sending the borrower several written notices containing specific information regarding the loan and consequences of nonpayment and the agency must "diligently" attempt to contact the borrower by phone to demand repayment. 34 C.F.R. § 682.410(b)(5) and (6)(iii). The FDCPA, however, requires debt collectors to terminate communications at the borrower's request. 15 U.S.C. § 1692c(c).

(2) The FFELP requires a guaranty agency to make "diligent" attempts to trace a borrower whose location is unknown, 34 C.F.R. § 682.410(b)(6), while the FDCPA limits contacts that a debt collector may make with third parties. 15 U.S.C. § 1692b(3).

(3) Guaranty agencies are required to contact a debtor's employer to pursue administrative wage garnishment under 20 U.S.C. § 1095(a). However, the guarantor's mentioning of a debt in communicating with the employer as a third party could violate 15 U.S.C. § 1692c(b).

ECMC points out that a guaranty agency that fails to follow FFELP regulations could be sanctioned by the DOE or lose reinsurance on its loan portfolio. On the other hand, if FDCPA regulations are not followed and the agency is subject to them, the agency could be subject to civil liability.

The alleged inconsistencies, argues ECMC, make it "virtually impossible" for it to comply with both the FFELP and FDCPA. Under Busic v. United States, 446 U.S. 398 (1980), when Congress passes two statutes arguably referring to the same subject matter, the more specific statute controls. ECMC thus argues that, because ECMC's sole reason for existence is to facilitate and administer student loans, the HEA/FFELP provisions should take precedence over the more generally applicable FDCPA. Further, given the existence of comprehensive regulations under the HEA governing the collection of student loans, ECMC argues that application of the FDCPA would be superfluous and that summary judgment should therefore be granted in this case.

### 1. Pelfrey's Response

Pelfrey states that the regulatory scheme governing ECMC's student loan collection does not preclude or directly interfere with FDCPA compliance. Pelfrey does not allege that ECMC, in any way, violated the regulations provided by the DOE for the collection of FFELP loans. She acknowledges that DOE regulations require agencies such as ECMC to engage in certain minimum contacts with debtors, to act "diligently" with respect to collection, and to communicate the importance of repayment to the debtor. Pelfrey does not concede

Case 1:98-cv-02422-RBP   Document 17   Filed 02/10/99   Page 24 of 25

that the regulations actually conflict with the requirements set out by the FDCPA. She argues that allowing agencies such as ECMC to escape the requirements of the FDCPA would allow such agencies to engage in a number of unfair and harassing tactics, and to do so without any fear of reprisal. Granting such freedom to private nonprofit corporations was, according to Pelfrey, not the purpose of the exceptions section to the general definition of "debt collector" in the FDCPA. Pelfrey further contends that allowing ECMC to pursue collection of student loans free of the requirements of the FDCPA would work against the public interest and would work as a competitive disadvantage to other private collectors who must guide themselves by the FDCPA's strictures. She argues that nothing in the "findings and purposes" section of the FDCPA stated within § 1692 supports the protection of entities such as ECMC from liability, and that ECMC should, therefore, be subject to the Act.

## V. Court's Conclusion

After considering the above stated facts, contentions of the parties, statutes, regulations and cases, the court concludes that the facts of this case clearly fall within the "incidental to a bona fide fiduciary obligation" exception as provided in 15 U.S.C. § 1692a (6)(F)(i). This court agrees with the reasoning in Davis v. United States Aid Funds, Inc., as quoted above. 20 U.S.C. S 1072(g)(1) provides that, "the reserve funds of the guaranty agencies, regardless of who holds or controls the reserves or assets, shall be considered to be the property of the United States. . ." 20 U.S.C. S 1078(c) and 34 C.F.R. S 682.410 set out an extended list of requirements applicable to guaranty agencies with regard to collection activities; receipt, allocation and accounting for funds; etc. Section 682.410(a)(5) provides that "the guaranty agency shall exercise the level of care required of a fiduciary charged with the duty of investing the money of others when it invests the assets of the reserve fund described in paragraph (a)(1) of this section." Such reserve funds include, "funds collected by the guaranty agency on FFEL Program loans on which a claim has been paid." 34 C.F.R. S 682.410(a)(1)(vii).

Just as Congress apparently did not consider it untoward for a creditor to engage in conduct forbidden to some non-creditor debt collectors, or for commercial debt collectors to engage in conduct forbidden to consumer debt collectors, it may well be that Congress did not restrict collection activities related to student loans under the FDCPA. For example, see 34 C.F.R. S 682.410(b)(6)(xii) which states, "[t]he agency shall attempt diligently to locate the borrower through the use of all available skip-tracing techniques. . . " (emphasis added). Further, FFELP Guaranty agencies, unlike debt collectors, have the authority to garnish disposable pay of a borrower. 34 C.F.R. S 682.410(b)(6)(vii)(A).

Having exempted ECMC type guaranty agencies from liability under the FDCPA, it is up to Congress

to address any abuses which may result from the collection activities of fiduciaries.  This court is also persuaded by the deference due to the DOE and FTC statements on the issue.[17]  The court does not reach the issues of whether ECMC is otherwise a "creditor" or "debt collector" under the FDCPA.[18]  The court also agrees, however, that specific requirements of the FFELP and attendant regulations take preference over any general inconsistencies with the FDCPA.

    The defendant's motion will be Granted.

    Done and Ordered, this ___ day of February, 1999.

                        ROBERT B. PROPST

                        SENIOR UNITED STATES DISTRICT JUDGE

---

[17] Newman v. Boehm, Pearlstein & Bright, Ltd., 119 F.3d 477 (7th Cir. 1997) (court should take note of the position of the staff of the FTC in interpreting the FDCPA and accord that position due weight).

[18]  In addition to defendant's arguments, it is reasonably arguable that ECMC did not receive "an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another", certainly not the original creditor.  The transfer was in connection with the guaranty relationship and DOE's oversight of the program.  It is also reasonably arguable that ECMC is "affiliated by [DOE] corporate control . . . " See 15 U.S.C. § 1692a (4)(B).  In her brief, plaintiff states, "The provisions are imposed upon the defendant by the DOE to make sure the government get its monies worth when agreeing with a private entity [to] do work that the government, by statute and regulation is obligated to carry out."